```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------- X
ANTHONY PENSIERO,                                           :
                                                            :
                              Plaintiff,                    :
                                                            :      **MEMORANDUM**
              -against-                                     :      **DECISION AND ORDER**
                                                            :
BOUCHARD TRANSPORTATION CO., INC.                           :      07 Civ. 3536 (BMC)
and John Doe 1, 2 and 3,                                    :
                                                            :
                              Defendants.                   :
                                                            :
                                                            :
----------------------------------------------------------- X
```

**COGAN**, District Judge.

This matter is before the Court upon plaintiff's motion for partial summary judgment, seeking judgment in his favor on his fourth cause of action for maintenance and cure. The action arises from an injury he alleges he received while attempting to return to work on a vessel that defendant Bouchard Transportation Co., Inc. ("Bouchard") operated. The motion is granted.

## BACKGROUND

Plaintiff was an Assistant Engineer working on Bouchard's tug, Evening Mist.[1] His employment was as a per diem employee pursuant to an arrangement known as "equal time." Under this practice, at least as Bouchard implemented it, plaintiff would work three weeks on the job followed by three weeks off the job, and he was paid only for his time on the job. Bouchard left it to the seamen to determine between them how and when they would relieve each other at the end of their three week terms. In addition, although Bouchard would pay for transportation

---

[1] Bouchard notes that while it operated the Evening Mist, the ship was actually owned by Tug Evening Mist Corporation. Bouchard has pointed to no legal significance as to this fact and I assume Tug Evening Mist is wholly owned or affiliated with Bouchard.

for its employees, plaintiff instead elected to receive an additional daily stipend from Bouchard reflecting the cost of transportation.

At the end of a period of three weeks off, plaintiff had arranged to relieve another engineer, Jeff Patterson, by returning to work on the Evening Mist on February 7, 2007. The Evening Mist was at anchorage. Therefore, plaintiff had arranged with another tug operated by Bouchard, the Morton S. Bourchard, Jr., to take him to the Evening Mist. The Morton S. Bourchard, Jr. was tied up alongside a row of three docked vessels in Port Jefferson owned by another company, McAllister Transportation. The only way to get to the Morton S. Bouchard, Jr. was to cross over each of the McAllister vessels.

Plaintiff claims that there was an arrangement between McAllister and Bouchard to allow each other's seamen to cross over each other's boats if necessary to get to their own boats. Defendant disputes this, alleging that plaintiff's crossing over the McAllister vessels was not authorized by the company. In any event, it is undisputed that "the Morton S. Bouchard, Jr. had come up against the third McAllister tugboat to board [plaintiff] and two other Bouchard crew members."

When crossing from the second to the third McAllister tugboat, plaintiff fell and broke his foot. He made it to the Morton S. Bouchard, Jr., but because he was obviously unable to work, the Morton S. Bouchard returned him to the dock instead of the Evening Mist, and he was taken to a hospital. He has been unable to work since and has incurred medical expenses.

# DISCUSSION

## I. Standard for Summary Judgment

In deciding a motion for summary judgment, a court shall render judgment "forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The moving party has the initial burden of showing that there are no material facts in dispute, Adickes v. S.H. Kress & Co., 398 U.S. 144, 157, 90 S.Ct. 1598, 1608 (1970), and can discharge this burden by demonstrating that there is an absence of evidence to support the nonmoving party's case, Celotex, 477 U.S. at 325. The nonmoving party then must come forward with "specific facts showing that there is a genuine issue for trial," Fed.R.Civ.P. 56(e).

The court "must resolve all ambiguities and draw all reasonable inferences in favor of the party defending against the motion." Lopez v. S.B. Thomas, Inc., 831 F.2d 1184, 1187 (2d Cir.1987); see also Eastway Constr. Corp. v. New York, 762 F.2d 243, 249 (2d Cir.1985). However, the court must inquire whether "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249, 106 S.Ct. 2505, 2510-11 (1986). If there is not, summary judgment is proper. See id. at 249-50.

## II. Analysis

The general maritime law of the United States grants to seamen who have become ill or injured while in a ship's service the right to maintenance and cure. Ammar v. United States, 342 F.3d 133, 142 (2d Cir. 2003) (collecting cases). "Maintenance" is defined as a shipowner's duty to provide food and lodging to an injured seaman of approximately the same quality as he received aboard ship. Id. "Cure" is defined as "a shipowner's obligation to provide … medical care to such seamen" during the period of rehabilitation from the injury until the point of full recovery or a determination of permanent disability. Calo v. Ocean Ships, Inc., 57 F.3d 159, 162 (2d Cir.1995). A shipowner owes maintenance and cure to an injured seaman even if the shipowner was not negligent. Nor does it matter if the injury was job-related. Ammar, 342 F.3d at 142 (discussing maintenance); Calo, 57 F.3d at 162 (discussing cure).

The no-fault obligation of shipowners to provide maintenance and cure extends only to a seaman who becomes ill or injured while "in the service of the ship." See Aguilar v. Standard Oil Co., 318 U.S. 724, 731-32, 63 S.Ct. 930 (1943) (internal quotation marks omitted). "In the service of the ship" includes injuries incurred while ashore if the seaman is "generally answerable to the call of duty." Farrell v. United States, 336 U.S. 511, 516, 69 S.Ct. 707, 709 (1949). Thus, if a seaman is authorized to be ashore to conduct his own personal business and is injured while returning to ship, he is entitled to maintenance and cure. Aguilar, 318 U.S. at 736-37, 63 S.Ct. at 937. Similarly, a sailor injured while on shore leave also qualifies. See Warren v. United States, 340 U.S. 523, 71 S.Ct. 432 (1951).

Bouchard's challenge here rests on one undisputed fact, that plaintiff was a per diem employee, and thus was not being paid at the time of his injury, and one disputed issue of fact,

4

whether Bouchard had an arrangement with McAllister to allow seamen to cross each other's vessels as a means of boarding. On those grounds, Bouchard contends that plaintiff was not in the service of his ship at the time of his injury. It distinguishes cases involving shore leave as applying to "blue water" seamen, that is, seamen on ocean-going vessels who are long term employees and only have interim shore leave during their vessels' voyages, unlike plaintiff's equal time arrangement. See e.g. Sellers v. Dixlyn Corp., 433 F.2d 446 (5th Cir. 1970). It also distinguishes cases in which the employer paid for or arranged for the seaman's transport to or from a vessel, during which travel the seaman was injured. See e.g. Daughdrill v. Diamond M Drilling Co., 447 F.2d 781 (5th Cir. 1971). Bouchard places principal reliance on Miller v. Browning S.S. Co., 165 F.2d 209 (2d Cir. 1947), where the Second Circuit found no right to maintenance and cure where the seaman was injured while boarding to have an interview with the shipowner to see if he would be hired, even though the interview probably would have been a formality.

Bouchard's argument is not without merit but I find it unpersuasive based on the facts of this case. First, the fact that plaintiff was only paid for ship time does not put him in the same category as the prospective employee in Miller. Bouchard characterizes plaintiff as essentially newly employed every time that he boarded his vessel, and unemployed every time he disembarked, but that obscures the reality of the arrangement. Plaintiff had an employment relationship with defendant. He was not subject to an interview process. He had apparently performed satisfactorily in the past and Bouchard was satisfied to have him perform continuing services.

No doubt, if plaintiff had been derelict in showing up for work and Patterson or the tug Captain had complained to management that plaintiff was not fulfilling his part of the equal time

5

bargain, or if plaintiff had performed defectively in his responsibilities on board, Bouchard would have terminated his equal time arrangement. For this reason, Bouchard's assertion that plaintiff was not "answerable to the call of duty" is wrong. Of course he was; that is why he was returning to the Evening Mist. It is a mischaracterization to describe plaintiff as having no obligation to return to the tug simply because he would only be paid when he set foot on deck.

Second, while there is an issue of fact as to whether McAllister and Bouchard had a policy of allowing mutual vessel-crossing, it is not material. There is no dispute that even without that policy, the Captain of the Morton S. Bouchard, Jr. anchored or tied it alongside the row of McAllister vessels for the express purpose of allowing plaintiff and two other Bouchard employees to cross over the McAllister vessels and come aboard. As Bouchard admits, "the Morton S. Bouchard, Jr. had come up against the third McAllister tugboat to board [plaintiff] and two other Bouchard crew members." There is similarly no dispute that this arrangement was the only way that plaintiff (and the other Bouchard crewmembers) could board the Morton S. Bouchard, Jr., nor is it disputed that Morton S. Bouchard, Jr. planned to take plaintiff to the Evening Mist.

Whether or not there was an arrangement with McAllister, it was obviously no accident that the Morton S. Bouchard, Jr. was where it was, or that several Bouchard employees happened to be on the dock to cross the McAllister vessels to get to it. Bouchard complains that it was not responsible for establishing the McAllister boats as a gangway, and was "not aware" that its employees were using the McAllister boats as entry to the Morton S. Bouchard, Jr., but that is disingenuous. Its President and CEO (from whom it has submitted an affidavit) may not have known about it, but the Captain of the Morton S. Bouchard, Jr. put it there for that express

purpose, and that action, done for the shipowner's benefit, is imputed to the company.[2] It is as much arranging transport to the vessel as the shipowner calling a taxi service, see Mounteer v. Marine Transport Lines, 463 F. Supp. 715 (S.D.N.Y. 1979)[3], or paying a co-employee to drive a seaman to a designated location, Vincent v. Harvey Well Service, 441 F.2d 146 (5th Cir. 1971). The fact that plaintiff was receiving a special stipend for transportation, over and above his per diem pay, confirms that getting on board was part of the employment relationship.

Bouchard's distinction between blue-water and brown-water seamen has validity in some cases, but not here. It would be one thing if plaintiff had been injured during his three weeks shore time while bowling or playing pool. See Baker v. Ocean Systems, Inc., 454 F.2d 379 (5th Cir. 1972). In such a case, the need for non-ship leisure time of blue-water seaman likely compels a broader entitlement to maintenance and cure. But where the brown-water seaman is on a direct path to resume his duties on board, and is injured on that path, there is no reason to create such a distinction. Both the blue-water and brown-water shipowners have to have their seamen on board; the seamen in both instances would be subject to discipline if they failed to get there; and their return to their vessels is for the shipowners' benefit as well as their own.

Bouchard also claims that this case is not appropriate for partial summary judgment because it rests on plaintiff's credibility. Bouchard's problem is that it has done nothing to challenge plaintiff's credibility. All it can say is that it "does not accept" plaintiff's version of the facts, but it admits that its "investigation cannot confirm or deny that the injury occurred in the

---

[2] Bouchard asserts that the Captain was "severely reprimanded for violating company policy" in this regard, but that is irrelevant. Bouchard put him at the helm, and this was no frolic and detour; he was performing company business by transporting Bouchard employees to their place of employment.

[3] Mounteer also questioned the continuing validity of Miller v. Browning S.S. Co., supra, in light of the Supreme Court's subsequent decision in Hopson v. Texaco, 383 U.S.262, 86 S.Ct. 765 (1966). Miller does seem inconsistent with at least the approach in both Hopson and the post-Miller admonition in Vaughan v. Atkinson, 369 U.S. 527, 532, 82 S.Ct. 997, 1000 (1962), that courts should resolve doubts concerning the right to maintenance and cure in favor of the seaman.

7

manner as claimed by plaintiff," and that it "has no evidence to dispute that Plaintiff complained of foot pain when he was on the McAllister boat." Bouchard seeks to avoid summary judgment merely because it "has not been able to locate a witness who saw the accident happen."

This does not mean, as Bouchard asserts, that "plaintiff's proof rests on his credibility." A party cannot avoid summary judgment by asserting that perhaps its adversary is not telling the truth. It has to come forward with some evidence, direct or circumstantial, to support that conclusion. Bouchard has come forward with none. The absence of proof is telling since the accident happened nearly nine months ago; Bouchard was aware of it shortly after it happened; it employs a Risk Manager to deal with such incidents; its own employees, who it could have and probably did interview, were responsible for lining up the Morton S. Bouchard, Jr. vessel with the McAllister vessels; and Bouchard conducted an investigation without learning anything to undercut plaintiff. Bouchard has also taken plaintiff's deposition, and has pointed to no internal inconsistencies in his description of the events. Bouchard is unable to raise an issue of fact now, and it has offered nothing specific about what might happen in the future that would allow it do so.[4]

Finally, the Court notes that this Order is appropriate for certification under Fed.R.Civ.P. 54(b), as the Court suggested to the parties it might do at the Initial Status Conference if it granted the motion. Since this claim is based on maintenance and cure, essentially a no-fault claim, it is factually and legally distinct from plaintiff's other claims, which require a finding of fault. Plaintiff has made a showing that he is in serious financial difficulty with regard to his

---

[4] Bouchard also asserts that because plaintiff failed to submit a Local Rule 56.1 statement, his motion should be denied (plaintiff submitted it after Bouchard's opposition, so I am disregarding it). Bouchard reasons that since the failure to oppose a Rule 56.1 statement can result in the facts being deemed admitted, the failure to submit one means the motion must be denied. Without commenting in detail on that argument, I would only note that I have discretion both with regard to an unopposed Rule 56.1 statement and the failure to submit one, and considering that the events at issue here are straightforward and fully set forth in plaintiff's moving papers, I waive compliance with the rule.

8

medical bills and lack of income and is facing pressure from health care providers on unpaid medical bills. Bouchard has not challenged the calculation or reasonableness of the amounts that he claims for maintenance and cure. Following the usual procedure of awaiting final judgment would subject plaintiff to undue hardship. Accordingly, the Court will certify this Order under Rule 54(b).

## CONCLUSION

Plaintiff's motion [7] for partial summary judgment as to the Fourth Cause of Action is granted. Pursuant to Rule 54(b), the Court certifies that there is no just reason for delay in entering final judgment on this Count. The Clerk therefore is expressly directed to enter a final judgment as to the Fourth Cause of Action in the following amounts: (1) for cure in the amount of $17,150.35; plus (2) for maintenance in the amount of $44.00 per day from February 7, 2007 until the date of entry of judgment. Because both of these amounts will continue to accrue beyond entry of judgment, the Court will direct amendment of the judgment if the parties are unable to stipulate to such an amendment. Consideration of costs and attorneys fees is deferred pending disposition of the remainder of the complaint.

**SO ORDERED.**

                                  s/Brian M. Cogan
                                       U.S.D.J.

Dated: Brooklyn, New York
       November 10, 2007